IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

STEVEN MURPHY,
#M04196,

        Plaintiff,

v.

MOHAMMED SIDDIQUI,
ANGELA CRAIN,[1] and
ANTHONY WILLS,

        Defendants.

Case No. 21-cv-00324-SPM

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

    This matter is before the Court on a motion for summary judgment filed by Defendants Crain and Wills[2] and a motion for partial summary judgment filed by Defendant Dr. Siddiqui. (Doc. 39, 42). Plaintiff Steven Murphy filed a response. (Doc. 45). For the reasons set forth below, both motions for summary judgment are denied.

## BACKGROUND

    Plaintiff Steven Murphy, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, commenced this lawsuit pursuant to 28 U.S.C. §1983 alleging that his constitutional rights were violated. Murphy claims that in 2018 he was injured in a fight with a former cellmate. Since that time, he has been denied adequate medical care for his injuries. Murphy asserts that he continues to suffer from lower back pain and leg

---

[1] The Clerk is **DIRECTED** to update the docket to reflect the correct names of Defendants as indicated in their motions for summary judgment. (Doc. 39, 42).
[2] Defendant Warden Wills is a party to this case in his official capacity only for the purposes of implementing any injunctive relief that may be ordered.

numbness and has difficulty walking and standing. He is proceeding with the following claim:

> **Count 1:** Eighth Amendment claim of deliberate indifference against Dr. Siddiqui and Angie Crain for delaying and failing to provide adequate treatment for his painful back injury and corresponding leg numbness.

(Doc. 8).

Defendants filed for summary judgment arguing that Murphy has failed to exhaust his administrative remedies prior to commencement of this suit, as required pursuant to 42 U.S.C. § 1997e(a).

## LEGAL STANDARDS

### I. Summary Judgment

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party. *Lawrence v. Kenosha Cty.,* 391 F.3d 837, 841 (7th Cir. 2004). The moving party is entitled to judgment as a matter of law when the pleadings, answers to interrogatories, depositions, and admissions, along with affidavits, show that there is no genuine issue of material fact. FED. R. CIV. P. 56(c).

### II. Exhaustion of Administrative Remedies

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). The PLRA states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006) (noting that

"[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion of available administrative remedies must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. The statutory purpose of the PLRA is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). This allows the prison administration an opportunity to fix the problem or to reduce the damages and perhaps shed light on factual disputes that may arise in litigation even if the prison administration's solution does not fully satisfy the prisoner. *See Pozo,* 286 F.3d at 1023-24. To allow otherwise would frustrate the purpose of the grievance process. *See Porter v. Nussle*, 534 U.S. 516, 526 (2002).

### III. Grievance Procedures

As an inmate in the custody of IDOC, Murphy was required to follow the grievance procedure laid out in the Illinois Administrative Code ("grievance procedures"). 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures direct inmates to file their grievances first with the counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). Grievances that are unable to be resolved through routine channels are then sent to a grievance officer. *See* 20 ILL. ADMIN. CODE § 504.820(a). The grievance officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). The grievance officer must submit his findings to the Chief Administrative Officer ("CAO") within two months after receiving the grievance. 20 ILL. ADMIN. CODe § 504.830(e). The CAO then

reviews the findings and recommendation of the grievance officer and issues a written decision to the inmate. *Id.* If the inmate is not satisfied with the response, he can file an appeal with the Administrative Review Board ("ARB"). *See* 20 ILL. ADMIN. CODE § 504.850(a). The ARB must receive the appeal within 30 days after the date of the decision by the CAO. *Id.* Only after a grievance is reviewed by the ARB is it deemed exhausted. *See Pozo,* 286 F.3d at 1023–24.

## DISCUSSION

One relevant grievance cited to by both Defendants is Grievance #181-6-20, dated June 10, 2020. (Doc. 40-1, p. 68). In this grievance, Murphy grieves he is experiencing severe back pain. He states that Dr. Siddiqui is aware of his medical issue but is denying him adequate care and ignoring his complaints. Murphy asks to be seen by an outside specialist to determine appropriate treatment for his back pain. On June 22, 2020, Health Care Administrator Angela Crain reviewed the grievance and sent a response to the correctional counselor updating the counselor on Murphy's medical care. Crain notified the counselor that Murphy should submit a nurse sick call slip for his continuing issues with pain. (*Id.* at p. 70). The counselor forwarded Crain's response to Murphy. Murphy then submitted the grievance to the grievance officer, and the grievance officer recommended that the grievance be denied as moot. (*Id.* at p. 66). The chief administrative officer concurred in the determination. Murphy then appealed the grievance to the ARB. The ARB denied the grievance determining that Murphy's claims had not been substantiated and that his issues were appropriately addressed by the facility. (*Id.* at p. 65).

Defendant Dr. Siddiqui argues that this grievance properly grieves only some of Murphy's claims against him. Dr. Siddiqui points out that in the June 10, 2020 grievance, Murphy complains of inadequate care specifically for the last "several weeks" and "for the last 3-4 weeks." Likewise, the ARB addressed Murphy's complaints based on the medical records from the "last 3-4 weeks

for back." The Illinois Administrative Code mandates that an offender shall file a written grievance within 60 days of discovering the incident. Thus, Siddiqui argues that the grievance cannot serve to exhaust any claims against him that occurred before April 11, 2020, 60 days before the filing of the grievance. Siddiqui contends that Murphy cannot complain of medical treatment for the past 3-4 weeks, but then state this grievance should have exhausted his administrative remedies dating back to medical are in 2018.

Defendant Crain argues that this grievance fails to grieve Murphy's claims against her, as she is not named in the grievance.

Both Defendants arguments are not well taken. First, as to Siddiqui's arguments, Murphy's allegations that he has been denied adequate medical care are ongoing in nature, not isolated incidents. Thus, he was not required to "file multiple, successive grievances raising the same issue…if the objectionable condition is continuing." *Turley v. Rednour,* 729 F. 3d 645, 650 (7th Cir. 2013). *See also Wilder v. Sutton*, 310 F. App'x 10, 15 (7th Cir. 2009) (finding that a grievance submitted in March of 2004 could serve to exhaust claims from the previous year due to the continuing denial of the plaintiff's requests for religious accommodation). In the June 20, 2020 grievance, it is true that Murphy writes he has had severe pain for the "last several weeks," and he grieves that he is not received medical treatment for recent medical issues, including pain, bloody bowels, and an infected foot. However, he also makes clear that he has been complaining about his back pain for a while. He communicates that he believes he is being denied current care because of his ongoing complaints about his back injury, which Murphy states Dr. Siddiqui has known about since his x-ray was taken in 2018. (*See* Doc. 43, p. 2). Murphy challenges his overall treatment by Dr. Siddiqui in this lawsuit, not merely specific incidents of inadequate care. Because Murphy was still being denied proper care for his back pain at the time of filing his grievance, the

grievance was timely and served to exhaust all of his allegations against Dr. Siddiqui. *See Love v. Myers*, No. 18-cv-2000-NJR, 2020 WL 4747714, at *4 (S.D. Ill. 2020) ("Exhaustion is not intended to provide individual notice to each prison official who might later be sued; it is designed to provide the prison with notice of the problem and give them an opportunity to fix it.") (citing *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011)).

As to Crain, Murphy claims that she too was deliberately indifferent to his medical needs as she reviewed his grievances and aided Dr. Siddiqui in denying him care. Thus, she may be liable for deliberate indifference as Murphy's fell on "deaf ears." *Perez v. Fenoglio,* 792 F.3d 768, 782 (7th Cir. 2015). As discussed above, once Murphy grieved his medical issue, he was not required to file successive grievances raising the same issues if the conduct continued. *Turley*, 729 F.3d at 650. Crain was a part of the grievance process and provided a detailed response to the correctional counselor after reviewing the June 10, 2020 grievance. (Doc. 140-1, p. 70). Murphy did not need to file a separate, additional grievance against Crain for failing to obtain treatment for him after reviewing this grievance. *See Barrow v. Wexford Health Sources, Inc*., No. 14-CV-800-NJR-DGW, 2015 WL 5010104, at *4 (S.D. Ill. Aug. 24,2014) ("Relevant case law demonstrates that a previously submitted grievance will suffice to exhaust for future events so long as the prisoner remained in the same situation."). Accordingly, the June 10, 2020 grievance also serves to exhaust Murphy's claims against Crain.

Because Grievance #181-6-20 properly grieved Murphy's claims against both Defendants, their motions for summary judgment are denied, and the Court sees no need to address any remaining grievances and corresponding arguments put forth by Defendants.

**DISPOSITION**

For the reasons stated above, the motion for summary judgment (Doc. 39) filed Crain and

Wills and the motion for partial summary judgment (Doc. 42) filed by Siddiqui are **DENIED.**

The stay on merits discovery is **LIFTED,** and the parties can proceed with discovery on the merits. A new scheduling order will be entered by separate order.

The Clerk of Court is **DIRECTED** to update the docket in accordance with footnote 1.

**IT IS SO ORDERED.**

DATED:   August 26, 2022

                                            *s/Stephen P. McGlynn*
                                            **STEPHEN P. MCGLYNN**
                                            **United States District Judge**

Case 3:21-cv-00324-SPM   Document 49   Filed 08/29/22   Page 7 of 7   Page ID #492