IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN MURPHY,<br><br>　　　　**Plaintiff,**<br><br>v.<br><br>DR. SIDDIDQUI, ANTHONY WILLS, and ANGIE CRAIN,<br><br>　　　　**Defendants.** | Case No. 3:21-CV-00324-SPM |

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

　　This matter comes before the Court for consideration of two Motions for Summary Judgment. Defendants Anthony Wills and Angie Crain have filed a Motion for Summary Judgment and memorandum of law in support (Doc. 71), which Plaintiff Steven Murphy responded to (Doc. 75). Dr. Mohammed Siddiqui also filed a Motion for Summary Judgment (Doc. 68) and memorandum in support (Doc. 69), which Murphy responded to (Doc. 77). For the reasons set forth below, the Court grants the Motions.

### Relevant Facts and Allegations

　　In the Complaint filed pursuant to 42 U.S.C. § 1983, Murphy claims that various Wexford Health and Illinois Department of Corrections (hereinafter "IDOC") staff at Menard Correctional Center (hereinafter "Menard") denied him adequate medical treatment for lower back pain and leg numbness (Doc. 1). Following threshold review of this matter pursuant to 28 U.S.C. § 1915A, the Court allowed Murphy to proceed with an Eighth Amendment deliberate indifference claim against

Mohammed Siddiqui and Angie Crain for delaying and failing to provide adequate treatment for his painful back injury and corresponding leg numbness (Doc. 8, p. 2). Murphy also sought injunctive relief. Therefore, Anthony Wills, the Warden at Menard, remained in the case as a Defendant in his official capacity in order to carry out any injunctive relief should Murphy prevail. (*Id*. at 3).

Defendants moved for summary judgment (Docs. 68, 71). Defendants set forth the following undisputed facts: Murphy alleges that he has been experiencing lower back pain and numbness in his legs originating from an altercation with a former cellmate in 2018. (Doc. 8, p. 1-2). Murphy also indicated to a nurse that he was stabbed mid-back in 2002. (Doc. 71-1, p. 346). Murphy first made a sick call request on May 10, 2017 for complaints of right leg discomfort. (*Id*. at 9). On May 17, 2017, Murphy was seen by Dr. Coe for leg numbness. (*Id*. at 10). On July 14, 2017, he was seen during nurse sick call for left ankle pain. (*Id*. at 13). He claimed this injury originated from a fight approximately one year prior, for which he never received treatment. (*Id*.) On February 24, 2018, Murphy was seen during nurse sick call for pain and discomfort in the left ankle. (*Id*. at 18). The discomfort was categorized as "severe" numbness. (*Id*.) Murphy was prescribed Ibuprofen. (*Id*.) A few months later, on May 5, 2018, Murphy had another nurse visit to address his back pain (*Id*. at 20). He reported that the cause of his pain was an altercation about 6 months earlier, but he believed that he re-injured his back approximately one week prior to the visit when he was lifting weights. (*Id*.) The medical records reflected that he had no gait disturbance, swelling, redness, or tenderness to touch, but he was having difficulty transitioning from sitting to standing. (*Id*.) Murphy was prescribed Tylenol and was

advised to avoid physical activity. (*Id.* at 21). He was also given gentle strengthening exercises. (*Id.*) Murphy was seen by another nurse approximately one week later on May 17, 2018. (*Id.* at 22). Murphy reported that the Tylenol he had been prescribed was not helping, but he was also taking 500mg Naproxen at that time. (*Id.* at 23). He still had no gait disturbance, but displayed some redness bruising, and tightness. (*Id.*)

On May 22, 2018, Murphy was seen by a nurse practitioner, who ordered an x-ray of his lumbar spine. (Doc. 71-1, p. 24). The x-ray was completed on May 31, 2018. (*Id.* at 25). On June 18, Murphy saw Dr. Siddiqui to discuss the results of his x-rays, which indicated early degenerative changes. (*Id.* at 26). Murphy alleged that the reports were false and that he wanted an MRI. (*Id.*) He also reported that he was still experiencing pain, but he was lifting weights as normal. (*Id.*) Dr. Siddiqui advised that he abstain from going to the gym and referred him to physical therapy. (*Id.*)

Murphy attended a physical therapy consultation on September 27, 2018, where he was prescribed two sessions per week for six weeks. (Doc. 71-1, p. 33). Murphy attended two sessions: one on October 15 and one on October 19, 2018. (*Id.* at 34). He presented at nurse sick call on November 8, 2018 complaining that his medication had been changed and that he wanted to be prescribed Naproxen again. (*Id.* at 36). Murphy refused to attend his physical therapy treatment on November 16 and November 26, 2018, and physical therapy was terminated for failure to attend sessions. (*Id.* at 34).

On December 13, 2018, Murphy was in line to be seen by a nurse with a chief complaint of lower back pain, but signed a refusal to be seen. (Doc. 71-1, p. 42). On December 18, 2018, Murphy was seen by a nurse and reported that he had not

received his Naproxen he had been prescribed. (*Id.* at 43). He also told the nurse that he had an x-ray and it showed scar tissue and damage. (*Id.*) He was given Tylenol and was referred to Dr. Siddiqui. (*Id.*)

Murphy was seen for the second time by Dr. Siddiqui again on January 7, 2019 for his chronic back pain. (Doc. 71-1, p. 45).[1] Dr. Siddiqui observed that Murphy was having difficulty touching his toes and made a referral for an MRI. (*Id.*) However, Dr. Siddiqui's request for an MRI was not approved, and an alternate treatment plan was put in place to obtain a bilateral lower extremity electromyography ("EMG"). (*Id.* at 46). The EMG was completed on February 28, 2019 and yielded normal results. (*Id.* at 87).

On March 29, 2019, Murphy informed medical personnel that he wanted to discontinue physical therapy so that a medical hold could be removed from his file, potentially allowing him to transfer facilities. (Doc. 71-1, p. 54). On July 18, 2019, Murphy reported to nurse sick call and complained of back pain. (*Id.* at p. 57). He asked for Naproxen and was referred to a physician. (*Id.*) On April 21, 2020, Murphy reported to nurse sick call complaining of back pain that had been occurring for "a little over a year" and was given Tylenol. (*Id.* at 201).

On May 5, 2020, Murphy was seen by Dr. Siddiqui for his chronic back pain. (Doc. 71-1, p. 210). During this appointment, Murphy refused NSAIDs and said he wanted a muscle relaxer for his pain. (*Id.*) Dr. Siddiqui prescribed him Robaxin, a

---

[1] The Court notes that Defendants stated that this appointment occurred on January 7, 2019, but the note is dated January 7, 2018. Murphy did not dispute the date and the difference is immaterial to the findings in this Order.

muscle relaxer, at this visit. (*Id.*)

On June 20, July 3, August 1, September 26, December 9, 2020, and April 30, 2021 Murphy was seen by nurses for lower back pain. (Doc. 71-1, pp. 216, 222, 231, 241, 246, 269). He was given Ibuprofen at two of the visits. (*Id.* at 222, 241). On the December 9th visit, he was given Tylenol. (*Id.* at 246). At that visit, he reported that he had been given Naproxen and muscle relaxers in the past and they helped a bit, but the Tylenol and Ibuprofen were not effective. (*Id.*) On December 17, 2020, Murphy saw a nurse practitioner who instructed him to perform back strengthening exercises three to four times a week and ordered an x-ray of his lumbar spine and SI joints. (Doc. 69-1, p. 50). The x-rays were completed on February 11, 2021. (*Id.* at 51). The x-rays yielded normal results. (Doc. 71-1, pp. 483-484).

Murphy was seen by a doctor on May 5, 2021 for back pain and leg numbness. (Doc. 71-1, pp. 271-272). He was seen by a nurse for the same issues on June 22, 2021. (*Id.* at 284). He mentioned experiencing pain when he lifted heavy objects. (*Id.* at 285). He was advised to refrain from physical activity, especially weightlifting. (*Id.*) He was seen about a week later by a nurse on June 30, 2021. (*Id.* at 287). He was taking muscle relaxers at that time and was prescribed 200 mg of Ibuprofen at that visit. (*Id.*)

On July 8, 2021, Murphy was evaluated by a nurse practitioner. (Doc. 71, p. 291). At this visit, he complained of GI irritation, and the nurse cancelled his pain medications. (*Id.*) The nurse practitioner also ordered x-rays of the lumbar and thoracic spine. (*Id.*) Murphy saw the nurse practitioner once again on July 28, 2021, who ordered muscle relaxers twice a day for two weeks and physical therapy. (*Id* at

402).

Murphy had another set of x-rays performed on his thoracic and lumbar spine on September 1, 2021. (Doc 71-1, p. 543). The results were reviewed with him on November 17, 2021. (*Id.* at 568). The x-rays indicated slight loss of disc height at the L5-S1 vertebrae, but the rest of the x-rays came back normal. (*Id.*)

From May 2017 to August 2022, Murphy was seen by medical personnel approximately 1-2 times per month. (Doc. 69, p. 8).

### LEGAL STANDARD

Summary judgment is appropriate if it is shown by the movant that "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (*quoting* FED. R. CIV. P. 56(a)). That "burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere conclusory allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Celotex*, 477 U.S. at 232-24.

In determining the existence of a genuine dispute of material fact, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Spath v. Hayes Wheels Intern.-Indiana, Inc.*, 211 F.3d 392, 396

(7th Cir. 2000). While the Court must view the evidence and draw all reasonable inferences in favor of the opposing party, "[i]nferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions, or rumors[.]" *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *Rand v. CF Industries, Inc.*, 42 F.3d 1139, 1146 (7th Cir. 1994); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323. Furthermore, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Henning v. O'Leary,* 477 F.3d 492, 496 (7th Cir. 2007).

## DISCUSSION

### I. Deliberate Indifference Claims

This case involves a single Eighth Amendment claim for deliberate indifference to a serious medical need against Defendants Angie Crain and Dr. Siddiqui. The Eighth Amendment prohibits cruel and unusual punishment and deliberate indifference to the "serious medical needs of a prisoner, [which] constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009). A prisoner is entitled to "*reasonable* measures to meet a substantial risk of serious harm" – not to demand specific care, or even the best care possible. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

Murphy's claim for deliberate indifference has an "objective and subjective component." *Estelle v. Gamble*, 429 U.S. 97 (1976). Murphy must establish that he suffered from an objectively, sufficiently serious medical condition. *Cesal v. Moats,* 851 F.3d 714, 721 (7th Cir. 2017). He must also show that Defendants actually knew of, but disregarded, a substantial risk to his health. *Cesal*, 851 F.3d at 721. It is well-settled that mere negligence is not enough to establish a Defendant's deliberate indifference. *See, e.g., Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986). In fact, even gross negligence is insufficient. *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). Instead, deliberate indifference is comparable to criminal recklessness. *Thomas v. Blackard,* 2 F.4th 716 (7th Cir. 2021) (citing *King*, 680 F.3d at 1018). Furthermore, Murphy must set forth evidence that Siddiqui's "treatment strayed so far from accepted professional standards that a jury could infer the doctor acted with deliberate indifference." *Petties v. Carter,* 795 F.3d 688, 692 (7th Cir. 2015).

"A party seeking to defeat a motion for summary judgment is required to 'wheel out all its artillery to defeat it'" *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) (citations omitted). "Failure to respond to an argument results in waiver" *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). Here, Murphy has not created a genuine dispute of material fact in his responses. Murphy alleged in his reply that he was placed in disciplinary segregation, ultimately resulting in his inability to furnish a sufficient challenge to defendants' summary judgment motions. (Doc. 75, p. 2; Doc. 77, p. 2). On two separate occasions, the Court reminded Murphy of his ability to file a motion for an extension of time should he require additional time to provide a response. (Docs. 52, 63). Murphy filed

no such motion.

Given Murphy's responses, there exists no genuine dispute over material facts, thus rendering summary judgment appropriate. Nevertheless, the Court will still ensure that the arguments made by Defendants properly substantiate their assertions of entitlement to summary judgment.

### A. Angie Crain and Anthony Wills

Murphy claims that in her administrative role, Crain was responsible for ensuring that his sick calls would provide him care for the serious medical needs he described, and that she was responsible for responding to medical grievances. (Doc. 1, p. 7-8). Crain contends that she is entitled to summary judgment, as the record contradicts any assertion that she was objectively unreasonable or deliberately indifferent to Murphy's serious medical needs. Crain argues that her involvement in Murphy's care was strictly administrative – she did not personally evaluate, treat, or otherwise interact with Murphy. (Doc. 71, p. 8). She was not personally involved in Murphy's medical care and although she ultimately denied Murphy's many grievances, they were not ignored. (*Id.*)

The Court finds that Murphy failed to present sufficient evidence to support a reasonable jury finding that Crain acted with deliberate indifference under the Eighth Amendment. A court will not find a jail official to have acted with deliberate indifference to an inmate's medically related requests if he reasonably relied on the judgment of medical personnel. *See Miranda v. Cnty of Lake*, 900 F.3d 335, 343 (7th Cir. 2018). Crain was entitled to defer to the judgment of jail health professionals, so long as she did not ignore Murphy. *See Diggs v. Ghosh*, 850 F.3d 905, 911 (7th Cir.

2017); *Arnett v. Webster*, 658 F.3d 742, 755-756 (7th Cir. 2011); *Hayes v. Snyder*, 546 F.3d 516, 527–528 (7th Cir. 2008); *Johnson v. Doughty,* 433 F.3d 1001, 1010–11 (7th Cir. 2006); *Greeno v. Daley*, 414 F.3d 645, 655–656 (7th Cir. 2005).

Also, under the legal standard for summary judgment, Murphy must create a genuine dispute of material fact. Murphy did not allege that Crain had any direct contact with him (Doc. 1). On May 28, 2019, Crain received and responded to Murphy's January 28, 2019 grievance complaining about inadequate medical care. (Doc. 1, p. 20). In responding to the grievance, Crain noted that she reviewed the grievance and Murphy's medical file and stated that Murphy's medical issues were adequately being addressed by Dr. Siddiqui and other medical staff. (*Id.*) Murphy's medical records reflect he was treated continuously by medical professionals and provided with appropriate testing and medications. (Doc. 71-1). Crain reviewed and responded to Murphy's January 28, April 1, July 1, and July 18, 2019 grievances in the same fashion. (Doc. 1, pp. 20, 24, 28, 37).

Crain had no "reason to doubt" that the health care unit based their recommendations on medical judgment and were adequately addressing Murphy's concerns. *Rasho v. Elyea*, 856 F.3d 469, 478 (7th Cir. 2017); *Arnett*, 658 F.3d at 756 ("A layperson's failure to tell the medical staff how to do its job cannot be called deliberate indifference; it is just a form of failing to supply a gratuitous rescue service.") (quoting *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009)). Crain reviewed and responded to Murphy's grievances, made sure that the medical staff was monitoring and addressing the problem, and reasonably deferred to the medical professionals' opinions. Accordingly, Crain is entitled to summary judgment.

### B. Mohammed Siddiqui

Murphy alleges that Dr. Siddiqui denied him medical procedures for his lower back injury and that he "cut corners" to save Wexford money. (Doc. 1, p. 6).

A disagreement with a doctor's medical judgment about the proper choice of treatment – or even a disagreement between two medical professionals – is not enough to establish deliberate indifference. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). Instead, Murphy must set forth evidence that Siddiqui's "treatment strayed so far from accepted professional standards that a jury could infer the doctor acted with deliberate indifference." *Petties,* 795 F.3d at 692. In other words, a "medical professional is entitled to deference in treatment decisions unless 'no minimally competent professional would have so responded under those circumstances.'" *Pyles,* 771 F.3d at 409 (citations and quotation marks omitted).

Viewing the evidence and all reasonable inferences in Murphy's favor, after examining the totality of his medical treatment, the record shows that Siddiqui and other medical staff actively provided Murphy ongoing treatment for his lower back injury approximately once a month from May 2017 to August 2022. (Doc. 71-1). According to the medical records, Dr. Siddiqui's interactions with Mr. Murphy were limited to three occasions, during which he took proactive measures such as reviewing his x-ray results with him, referring him for an MRI, and prescribing muscle relaxers. The record reflects that Siddiqui used his best medical judgment to make informed decisions about Murphy's course of care. Clearly, Siddiqui's treatment did not stray so far from the medical standard of decency to constitute an instance of deliberate indifference. Additionally, the fact that Murphy received a different

procedure than he requested does not rise to the level of deliberate indifference. For the foregoing reasons, Siddiqui is entitled to summary judgment.

## II. Injunctive Relief

Wills claims that he is entitled to summary judgment on Murphy's request for injunctive relief in the form of compelling that that he be sent to a back pain specialist outside of the prison system and be transferred to a different prison. Wills claims that he is entitled to summary judgment because Murphy will not be able to show that a federal right was infringed upon and there is no ongoing violation which would require an injunction. (Doc. 71, pp. 15-16). Murphy did not create a material factual dispute and failed on the issues. As a result, Murphy fails here as well. Wills is entitled to summary judgment.

## III. Qualified Immunity

Crain claims that she is also entitled to summary judgment under a theory of qualified immunity, even if she was deliberately indifferent. Governmental officials performing discretionary functions are generally shielded from liability or civil damages insofar as their conduct does not violate a "clearly established" statutory or constitutional right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

A state official such as Crain is protected by qualified immunity unless Murphy shows "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Kemp v. Liebel*, 877 F.3d 346, 350-51 (7th Cir. 2017) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Murphy bears the burden of producing specific factual support for his

claim in order to overcome Crain's qualified immunity defense and produced no such facts. *See Ewell v. Toney*, 853 F.3d 911, 919 (7th Cir. 2017). As a result, even if Murphy created a material dispute of fact, Crain is immune from suit.

## CONCLUSION

Accordingly, the Court **GRANTS** Defendants Anthony Wills and Angie Crain's Motion for Summary Judgment. (Doc. 71). Plaintiff Steven Murphy's claim and request for injunctive relief against Defendants Wills and Crain is **DISMISSED with prejudice**. The Court also **GRANTS** Defendant Dr. Mohammed Siddiqui's Motion for Summary Judgment. (Doc. 68). Murphy's claim against Siddiqui is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:  March 22, 2024**

*s/ Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**U.S. District Judge**
